I concur with the results of this case but write this separate opinion to express my reasons for concluding that a $200,000.00 award is more reasonable than that awarded by the deputy commissioner, although even the reduced amount may be excessive.
Defendant has admitted liability, and the only issue is the amount of damages. As plaintiff's injury occurred in the course and scope of her employment, she has a companion workers' compensation claim. The evidence suggests that at the time of the deputy commissioner hearing plaintiff had incurred $11,914.95 in medical expenses, $7,324.00 in rehabilitation treatment, and received $73,830.83 in workers' compensation indemnity payments. As these numbers suggest, plaintiff has received extensive medical and diagnostic tests and she has not returned to her former employment. Although other Commissioners may have different reasons for their opinions, I believe that the difference between the $300,000.00 awarded by the deputy commissioner and the $200,000.00 awarded by the majority rests on the weight to be given to Dr. Long, plaintiff's current treating physician. I personally give little weight to Dr. Long and find that his opinions are outweighed by the other medical evidence and disagree with his future medical treatment.
Plaintiff has been treated by several doctors in the course of her case. Plaintiff was initially diagnosed with a cervical strain secondary to the motor vehicle accident made the basis of this case; however, she currently contends that her greater problems are in her low back. Dr. Sweet in his report dated November 8, 1995, stated that plaintiff was primarily treated with physical therapy and work hardening, although plaintiff only attended 3 days of the work hardening program. Plaintiff was rated and released from the work hardening program with a 2% permanent partial disability rating to the spine. In particular, on November 8, 1995, Dr. Sweet, a neurosurgeon, noted:
 "My impression is chronic low back pain and right leg pain on undefined etiology. I feel that her complaints of pain are out of proportion to the actual physical and x-ray findings. I will review the MRI when it is brought to my office. However, if it is negative as reported, I would feel that this patient is able to do light duty without repetitive bending, lifting no more than 25 lbs. on a regular basis, or sitting/standing in one position for more than 30 minutes. I feel that she would definitely not benefit from being involved in a pain clinic. It should be noted that she was making more money being on compensation than she was working. I feel the patient has no motivation to return to work and it is going to be difficult to get her employed again. She does not have a neurosurgical problem and I do not have to see her again in this office." [emphasis added]
Similarly, Robert S. Humble, M.D., an orthopedic surgeon, on January 11, 1995, stated:
 "She arrives today in a wheelchair. She is accompanied by her father stating that she can hardly walk, can't get up, and the pain is excruciating. In physical exam, she appears to have tremendous amount of pain in the lumbar sacral region but has no weakness and no negative straight leg raising and no neural tension signs whatsoever. As stated before, her MRI scan was completely clean. The only thing that I can elicit that was excruciating pain for her today was Patrick's test. . . . There appears to be a strong motivation to get on disability or workmens comp. because her father states that if she holds out for another week or two she will be a candidate for disability. I described the nature [sic] that without any objective finding that the rating will be very minimal."
Consistent with this report, on February 9, 1995, Dr. Humble reported that plaintiff had positive Waddells with the therapist as well as with his examination with pain that was out of proportion to her physical findings. On June 29, 1995, Dr. Humble reported that plaintiff had negative EMG, nerve conduction, bone scan, MRIs and nerve blocks, and that plaintiff exhibited symptom magnification and submaximal effort for which he gave her a 2% permanent partial rating and released plaintiff from care.
Contrary to the medical care provided by other providers (some of which is summarized in the foregoing paragraph) Dr. Long's opinion is subjective and relies solely on plaintiff's report of her symptoms. The following statement by Dr. Long, is somewhat surprising, if not shocking:
 "Six years ago if I had given her prescriptions for narcotics and fairly significant pain medications, they would have taken my license away from me."
There is no objective evidence of significant injury or severe pain, although plaintiff does appear to have chronic low back pain. I find that the greater weight of the competent evidence is that plaintiff sustained a minor, soft tissue injury and give greater weight to the opinions of Dr. Sweet and Dr. Humble that plaintiff's objective testing has not reveal significant injury and that plaintiff suffers from secondary gain syndrome more than any objectively disabling condition. The greater weight of the competent evidence does not suggest that plaintiff needs continued opioid or other strong narcotics.
Plaintiff has sustained an injury and is entitled to damages; however, the extent of her injury has been exaggerated and her anticipated future medical care and loss of future earnings are not as severe as plaintiff, and Dr. Long, would project. Therefore, based on plaintiff's past medical expenses and the benefits paid in her workers' compensation claim, I agree that plaintiff's recovery should be reduced to no more than $200,000.00. In addition, I note that this recovery is subject to the employer's right to subrogation in her companion workers' compensation claim. N.C.G.S. § 97-10.2.
SIGNED this ___ day of ___, 2002.
 S/______________ RENE C. RIGGSBEE COMMISSIONER